IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED

MAR 2 7 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| LUESSENHOP, CHARLES<br>3107 White Daisy Place<br>Fairfax, VA 22031 | *<br>*<br>* | |
| PLAINTIFF, | * | Case: 1: 08-cv-00209<br>Assigned To: Huvelle, Ellen S.<br>Assign. Date: 2/6/2008<br>Description: General Civil |
| VS. | * | |
| WILLIS, WINFIELD<br>2816 Hillsdale Road<br>Baltimore, Maryland 21207 | *<br>* | |
| JACKSON, JR., CLAUDE W.<br>313 V Street, NE<br>Washington, DC 20002 | *<br>* | |
| PATTERSON, KEITH<br>5740 Industry Lane<br>Frederick, Maryland 21704 | *<br>* | |
| DEFENDANTS | * | |

## MOTION TO DISMISS COMPLAINT AND REQUEST FOR HEARING

Winfield T. Willis, Defendant in this matter, hereby submits a Motion to Dismiss the Plaintiff's Complaint and a Request for a Hearing on the Motion.

### BACKGROUND

1. Charles Luessenhop, Plaintiff, sold two properties in 1997 in which the buyers utilized the Federal Housing Administration's (FHA) insured mortgage loan program.

2. The Plaintiff fraudgently prepared documents to have the buyers of the properties qualify for the loans, paid the buyers a fee for participating in the fraud, and only paid a few months payments on the FHA loans for both buyers until FHA foreclosed on both of the properties in 1999.

3. After the fraud was disclosed by the United States Department of Housing and Urban Development (HUD) which handles the FHA insured mortgage loan program, the Plaintiff was convicted in Criminal Court under Case number 02-298A and 03-458A in the United States District Court in the Eastern District of Virginia.

4. The Plaintiff served several years in jail for the fraud and had to pay a restitution of approximately $200,000.

5. After serving the jail sentence, the Plaintiff appealed the conviction based on incompetent representation by his lawyer.

6. On or after February 27, 2006, the Plaintiff loss the appeal to overturn the conviction and have the restitution funds reimbursed.

7. Due to the Plaintiff losing the appeal, the Plaintiff decided to file this current action against the Defendant, Winfield T. Willis, who was an appraiser for HUD.

8. The Defendant was not a party to any sale of the property, did not receive any funds from the sale of the property, and never knew who brought the property.

9. The Defendant only conducted appraisals for HUD with a fee of less than $200 for each property.

10. The property at 1509 G Street, S.E., Washington, DC was appraised on or about August 27, 1999 for HUD.

11. The property at 815 K Street, S.E., Washington, DC was appraised on or about October 12, 1999 for HUD.

12. On October 14, 2002, the Plaintiff requested and received a review appraisal from Paula Iannotti for both 1509 G Street and 815 K Street (see attached Exhibit A and B) for the appraisals conducted on August 27 and October 12, 1999, respectfully.

13. On December 20, 2002, the Plaintiff also requested and received another review appraisal from Total Real Estate Services, Inc., Coleen C. Morrison, for both 1509 G Street and 815 K Street (see attached Exhibit C) for the appraisals conducted on August 27 and October 12, 1999, respectfully.

14. Both of these 2002 appraisal reviews ordered by the Plaintiff, stated that the value of the properties were substantially higher than the values appraised for HUD in 1999.

15. Based on the difference in value of the 1999 HUD appraisals and the 2002 review appraisals, the Plaintiff utilized these review appraisals to justify damages for his appeal to the court to refund the restitution.

16. The court denied the appeal for refunding the restitution paid under case number 02-298A and 03-458A.

17. Due to the Plaintiff having review appraisals completed in 2002 to calculate damages for the Plaintiff's appeal or trial, the three year statue of limitations for the Plaintiff to file against the Defendant expired in 2005.

18. Just because the Defendant testified in the Plaintiff's appeal case on February 27, 2006 for only a few minutes, does not establish a new date for the alleged damages because the Plaintiff had the review appraisals done in 2002 which establishes a concrete date that the Plaintiff knew of possible alleged damages.

19. If the Plaintiff had filed a complaint within the three year statute of limitations, the Plaintiff would have discovered the same information it found on February 27, 2006.

## STATUE OF LIMITATIONS

20. Defendant incorporates by reference herein, all of the allegations contained in paragraphs one (1) through nineteen (19) of this motion as if fully set forth herein.

21. The D.C. Code Ann. Sec. 12-301 clearly states that the statue of limitations is from the date of occurrence or the date of the realization of the cause.

22. The appraisals were conducted in 1999 and the Plaintiff had the appraisals reviewed on October 14, 2002 and December 20, 2002 by two separate appraisers; therefore, it is clear that the Plaintiff realized an alleged cause of action or injury on these dates in 2002.

Page 4 - Luessenhop vs Willis (Case: 1:08-cv-00209)

23. Therefore, in the best case, the statue of limitations expired on December 20, 2005.

24. Based on the Plaintiff's filing this complaint on February 6, 2008, after losing an appeal against HUD in the U.S District Court, Eastern District of Virginia, the statue of limitations date had expired several years before this filing.

    Wherefore, the Defendant request the Court to grant this motion to dismiss this case, and that the Defendant be awarded his cost and expenses, including attorneys' fees, together with such other and further relief as this Court may deem just and proper.

### FAILURE TO STATE A CLAIM IN WHICH RELIEF CAN BE GRANTED

25. Defendant incorporates by reference herein, all of the allegations contained in paragraphs one (1) through twenty four (24) of this motion as if fully set forth herein.

26. When deciding a motion to dismiss, "the court may consider extra-record materials, such as matters of public record and previous filings with the Court" Jacobsen v Oliver, 201 F.Supp.2d93,110 (D.D.C. 2002) (citing Marshall County Health Care Auth. V Shalala, 988 F.2d 1221, 1222 (D.C. Cir. 1993); Philips v Bureau of Prisons, 591 F 2d 966, 960 (D.C. Cir. 1079) (when considering a motion to dismiss, "the court may properly look beyond the complaint only to items in the record of the case or to matters of general public record").

27. In the Plaintiff's complaint it alleges that Defendant made a profit from the sale of the two properties, but the Plaintiff did not attach any proof and Plaintiff knows that the Defendant was not involved in any sale of the property or benefited from any sale of the property based on the trail and appeals in which the Plaintiff was convicted on fraud and served several years in jail.

28. The Inspector General for HUD, Rob Hladik (800-842-2610 ext. 4890) has requested Assistant United States Attorney Thomas H. McQuillan to provide the public record documents of Case: 02-298A and 03-458A to the Defendant which will take approximately three weeks. The Defendant will amend this Motion by providing these documents when they arrive.

29. The Inspector General, U.S. Attorney, and Plaintiff's Attorney all have investigated the sales for these two properties and know that the Defendant did not benefit from any sale of these properties.

Page 5 - Luessenhop vs Willis (Case: 1:08-cv-00209)

30. The Plaintiff went to jail for fraud for stealing funds through FHA insured mortgage loan transactions, so how can the convicted thief now sue innocent third parties after exhausting all appeals in the HUD case on or after February 27, 2006.

31. How can the Plaintiff who was convicted for fraud and served a jail term, try to sue anyone to re-coop funds he has stolen. The Plaintiff committed fraud in obtaining the FHA insured loans for two buyers and pocketed excessive cash from the deal, then let the properties fall into foreclosure after only paying a few payments.

32. The Plaintiff's restitution was paid to HUD, not the Defendant. Therefore, just because the Plaintiff lost the appeal case against HUD to reimburse the restitution, the law should not allow the Plaintiff to steal again from the Defendants in this case.

33. The public record information from Case 02-298A and 03-458A for the United States vs the Plaintiff will clearly show that the Plaintiff does not have a cause of action against the Defendant and that the Plaintiff has no facts in support of his claim which would entitle him to relief.

Wherefore, the Defendant request the Court to grant this motion to dismiss this case, and that the Defendant be awarded his cost and expenses, including attorneys' fees, together with such other and further relief as this Court may deem just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 25th day of March 2008, a copy of the foregoing Motion to Dismiss and Request for a Hearing was mailed, first class postage pre-paid, to:

Attorney James H. Falk, Jr.
Urban & Falk, PLLC
2867 S. Abingdon Street
Arlington, VA 22206
(Attorney for Plaintiff)

Claude W. Jackson, Jr.
313 V Street, NE
Washington, DC 20002
(Defendant)

Winfield T. Willis
2816 Hillsdale Road
Baltimore, MD 21207
(410) 499-4292
(410) 448-1603 fax
wtwillis@msn.com

Keith Patterson
5740 Industry Lane
Frederick, Maryland 21704
(Defendant)

Exhibit "A"

Paula Iannotti
2213 39th Place, NW
Washington, DC  20007

October 14, 2002

Re: 1509 G St., SE
    Washington, DC

Dear Mr. Luessenhop:

Per your request I have reviewed the appraisal of August 27, 1999 by Mr. Winfield Willis. My comments are based on the following information:

1. Subject property was totally renovated in 1997 and sold for approximately $165,000. Renovation work included: new systems (plumbing, heating, cooling, electrical), windows, kitchen, baths, roof and basement finish into separate apartment.

2. Subject property was foreclosed on in 1999 and sold (based on Mr. Willis's) appraisal for approximately $109,000 in August 1999 (appraised value $107,000).

    In reviewing Mr. Willis's appraisal I find no significant errors in his overall assessment of the neighborhood. His description of the subject property is sketchy; however, he states that the property would need only $7,000 in repairs for renovation condition. It is unclear why Mr. Will makes a condition adjustment for comps 2 and 3 as they are rated as "average" as is the subject. It is also unclear why he makes no adjustments for basement finish and for energy efficient items.

    I question the selection of sales presented for comparable purposes. I have readjusted his sales as presented as comparables 1,2 and 3 in the attachment grid. In my analysis, as adjusted, these sales required extraordinary adjustments when compared to the subject, far exceeding Fannie Mae guidelines. Based on these sales and data provided as to condition by the former owner, I conclude the estimated market value to be $140,000.

    In addition, I have chosen three other sales from the same time period and adjusted

Exhibit "A" con't

them based on my understanding of the market and general appraisal knowledge. I have presented these sales as comparables 4, 5 and 6 in the attachment grid. Based on these sales I conclude the estimated market value to be $160,000. It is my opinion that these sales (adjusted for the $7,000 necessary to meet sale conditions specified in Mr. Willis's report) more accurately reflect the value of the referenced property as of August 27, 1999.

If you have any questions I can be reached at (202) 337-7247.

Regards,

Paula Iannotti

attachments

Exhibit "B"

Paula Iannotti
2213 39th Place, NW
Washington, DC 20007

October 14, 2002

Re: 815 K St., NE
    Washington, DC

Dear Mr. Luessenhop:

Per your request I have reviewed the appraisal of October 8, 1999 by Mr. Winfield Willis. My comments are based on the following information:

1. Subject property was totally renovated in 1997 and sold for +/-$165,000. Renovation work included: new systems (plumbing, heating, cooling, electrical), windows, kitchen, baths, roof and basement finish into separate apartment.

2. Subject property was foreclosed on in 1999 and sold (based on Mr. Willie's) appraisal for $60,000 in May of 2000.

3. Subject property was then resold in August 2000 (two months later) for $179,950.

   In reviewing Mr. Willis's appraisal I find no significant errors in his overall assessment of the neighborhood. His description of the subject property is sketchy; however, he states that the property would need only $8,300 to be resold according to FHA resale guidelines. Also, it is unclear why Mr. Willis excluded certain elements of the basement square footage and finish in his analysis.

   Further, I question the selection of sales presented for comparable purposes. Of the three sales presented two are in a different market area and warrant site adjustments. The sale of comp 2 could not be confirmed in public records. I have readjusted his sales as presented as comparables 1, 2 and 3 in the attachment grid. In my analysis, as adjusted these sales required extraordinary adjustments when compared to the subject, far exceeding Fannie Mae guidelines. Based on these sales I conclude the estimated market value to be $155,000.

   In addition, I have chosen three other sales from the same time period and adjusted them based on my understanding of the market and general appraisal knowledge. I

Exhibit "B" con't

have presented these sales as comparables 4, 5 and 6 in the attachment grid. Based on these sales I conclude the estimated market value to be $155,000. It is my opinion that these sales (adjusted for the $8,300 necessary to meet FHA sale conditions) more accurately reflect the value of the referenced property as of October 12, 1999.

If you have any questions I can be reached at (202) 337-7247.

Regards,

*Paula Iannotti*
Paula Iannotti

attachments



# TOTAL REAL ESTATE SERVICES, INC.

**Coleen C. Morrison, IFA, GAA,** *President*

PO BOX 3371 • CROFTON, MD 21114

coleen@totalrealestate.com

Tel: (800) 392-9091 • Fax: (410) 721-5474

December 20, 2002

Mr. A. John Luessenhop, Jr.
9915 Robbins Drive
Beverly Hills, CA  90212


RE:   Charles Luessenhop – 1509 G Street, S.E., Washington, D.C. (08/27/99); and
      Charles Luessenhop – 815 K Street, S.E., Washington, D.C. (10/12/99)
      Appraiser on both assignments:  Winfield T. Willis

Dear Mr. Luessenhop,

At your request, I have reviewed the appraisals provided to me on the referenced properties in an effort to develop an opinion of value as of their respective effective dates.

First I want to state the limiting conditions and assumptions I have made for this assignment.

    I have not done a physical inspection of the subjects, or any of the comparables used in the original appraisal, as well as those I offer as better comparisons.

    I am assuming both of the subject properties are in average condition less the estimated amount of repairs which was reported in the appraisals.

    I am assuming the room counts, square footage and other improvements reported in the original appraisals are accurate and correct.

    I am assuming the full degree of renovation made on the properties when originally purchased by Mr. Charles Luessenhop is true and accurate verbal information.  If any of these assumptions turn out to be different than that reported herein, the final opinions of value could be altered.

Exhibit "C" con't

Mr. John A. Luessenhop, Jr.
December 20, 2002
Page Two

### 1509 G Street, S.E., Washington, D.C.:

It is my contention the original appraisal was undervalued by over 30% and I have attached a sales comparison grid of analysis with three more comparable properties.

My reasoning for this comes primarily from two thoughts: 1) the subject property was fully renovated from top to bottom between 1996 (purchased as a shell but the amount is unknown) and 1997 when it was sold for $177,000 to Bonnie and Ruth Ross; and 2) the amount of estimated repairs on the HUD appraisal appears nominal therefore, the property is not a good comparison against fair or poor sales.

It is also my contention that the comparables used in the original report contained errors in data and adjustments. Sale #1 was a bank owned sale being sold "as is" and reported by the appraiser as "poor" condition (possibly a shell) and was only adjusted 20,000; no finish in the basement and no adjustment made; settled in March, 1999. Sale #2 was in average condition but had no updating in the past 2 years like the subject and would have warranted an adjustment for this factor as well. Sale #3 had no adjustment in the basement finish; no adjustment for a driveway; and no updates over the past 2 years. The adjustments used also appear to be very conservative for this market.

The subject's market area consists of a range of sale prices from below $100,000 to just under $200,000 at the time the appraisal was made. The sales I have chosen as being better comparisons, were, in my opinion, more similar in condition and square footage, which tend to be of most significance in determining price.

I could have re-adjusted the comparables used in the original appraisal, but they would have showed grossly high adjustments. Additionally, all three sales used in the HUD appraisal are smaller in square footage and typically, when you compare your subject property to three inferior homes, your value may be unfairly impacted on the low side; the reverse would be true if you compared the subject to three superior homes, your value would be unfairly impacted on the high side. Ideally, finding a mix of both inferior and superior sales would be the best support for a final market value.

Based on the three sales I have provided, and attached to this letter, it is my opinion the subject property, as of August 27, 1999, with the above assumptions, would have a final opinion of value of approximately $150,000.

Exhibit "C" cont

Mr. John A. Luessenhop, Jr.
December 20, 2002
Page Three

### 815 K Street, N.E., Washington, D.C.

In reviewing the HUD appraisal on the K Street property, I include the same assumptions mentioned previously in this letter.

It is my contention the original appraisal was undervalued by over 125% and I have attached a sales comparison grid of analysis with three more comparable properties.

My reasoning for this comes from three thoughts: 1) the subject property was fully renovated from top to bottom between 1995 (purchased as a shell but the amount is unknown) and 1997 when it was sold for $165,000 to Doris Davis; 2) the amount of estimated repairs on the HUD appraisal appears nominal therefore, the property is not a good comparison against fair or poor sales; and most importantly, 3) the subject is a two unit property and the HUD appraisal used one single family comparison, a 2 unit comparison, and a 2 unit which cannot be verified with an mls listing.

In reviewing the original appraisal, sale #1 is a 2 unit property, but no mls listing on the property could be found; the only information available on this property was the public tax record which does reflect the sale in October, 1999 for $40,000. Additionally, this sale is reported as "fair" condition which would not appear to be a good comparison to the subject. Sale #2 is a 2 unit property but is located in a far inferior location and was being sold "needing full rehab". Sale #3 is a single family home and should not have been compared to the subject as a multi unit.

Once again, the HUD appraisal uses three sales which are inferior in square footage which could also be a contributing factor to the under valuing of the subject property.

I have attached a sales grid on the multi unit form for this property, in which I provide three multi unit sales for comparison.

Based on the three sales I have provided, and attached to this letter, it is my opinion the subject property, as of October 12, 1999, with the above assumptions, would have a final opinion of value of approximately $152,000.

It is my belief that both appraisals, viewed in their totality, would not be considered meaningful and credible. The USPAP violations, coupled with value issues, leads me to question the competence of the appraiser to do the assignments. I believe a homeowner, who is not an appraiser, would have been able to more closely assess their property with the most basic of knowledge to a closer level of accuracy than the HUD appraisals reflect, which leads me to believe there may be more involved than the lack of competence on the part of the appraiser.

Exhibit "C" con't

Mr. John A. Luessenhop, Jr.
December 20, 2002
Page Four

    I hope this information helpful to you. Please give me a call if you have any questions with regard to the attachments. I am also enclosing my invoice for my services as a reviewer for value.

    Hope you have a nice Holiday and a prosperous New Year.

Sincerely,

*Coleen C Morrison*

Coleen C. Morrison, IFA, GAA
Certified General License, DC #GA10394